1   **MARIANNE C LANUTI, ESQ.** (Nevada Bar #7784)
    194 Inveraray Ct.
2   Henderson, NV 89074
    Tel: (702) 270-2346
3   Fax: (702) 270-2346

4   Attorney for Plaintiffs

5                  **IN THE UNITED STATES COURT**
                      **DISTRICT OF NEVADA**
6

7                                               CV-S-02-1644-LDG-LRL
8   **Stephanie W., by and through her parent,**   )
                                                 )
9   **Shirley R.,**                              )
                                                 )
10             **Plaintiffs,**                   )
                                                 )   **COMPLAINT FOR CIVIL RIGHTS**
11  **v.**                                       )   **VIOLATIONS AND DAMAGES ARISING**
                                                 )   **UNDER 20 U.S.C. §1415**
12  **CLARK COUNTY SCHOOL DISTRICT,**            )
                                                 )
13             **Defendants.**                   )

14  ────────────────────────────────────────

15                  PRELIMINARY STATEMENT

16

17  1.  This is an action for declaratory relief and damages to redress the violation of rights secured

18      to plaintiff STEPHANIE W. pursuant to the Individuals with Disabilities Education Act

19      (hereafter "IDEA") as amended, 20 U.S.C. §1400, et seq. and the regulations thereto

20      (formerly entitled the Education of the Handicapped Act (hereinafter 'EHA") and the Nevada

21      Administrative Code for Special Education Programs Chapter 388 (hereafter "NAC").

22      Plaintiffs STEPHANIE W. and SHIRLEY R. seek to appeal those parts of the decision of the

23      Nevada State Review Officer, attached hereto as Exhibit A, which over-ruled the decision of

24      the Nevada Hearing Officer.

25

STEPHANIE W. (hereafter "Stephanie") is a student, who at all times relevant herein qualified for special education and related services pursuant to the IDEA and Nevada law under the eligibility of multiple impairments.

SHIRLEY R. (hereinafter "Parent") is Stephanie's parent, and brings this action on her daughter's behalf as well as in her own right. Through this action, the plaintiffs seek to enforce Stephanie's right to a free and appropriate public education (hereinafter "FAPE") pursuant to the IDEA and NAC, specifically, Stephanie's right to eligibility for special education and related services at all times relevant herein under the category of multiple impairments including autism, and to an appropriate identification, evaluation and services at no cost to her parents, which have been necessary for Stephanie to receive a free and appropriate education tailored to meet her unique and individual needs as mandated by federal and state law, and reimbursement to Stephanie's parent for the costs of providing the private services, which have been necessary to meet Stephanie's unique and individual pervasive needs.

At an administrative hearing conducted on September 4 and 5, 2002, the Nevada Department of Education Hearing Officer held for the parents on all four issues, and the Clark County School District appealed to a state level review officer. In arbitrarily overturning most of the issues, the review officer ignored the extensive factual record in this case, as well as the hearing officer's credibility determinations, failed to give proper deference to the state level hearing officer, failed to properly apply the procedural and substantive requirements of the IDEA, and failed to apply the applicable burden of proof to the school district in the review decision, as is required in the Ninth Circuit regarding the procedural and substantive appropriateness of the programs and services specifically offered to Stephanie in 2001 and again in 2002. Plaintiffs appeal therefrom in this action pursuant to 20 U.S.C. § 1415, seeking a denovo review of the issues decided for the parents which were overturned by the review officer.

## JURISDICTION

2. Plaintiff Stephanie, a student identified as disabled, seeks to enforce the rights conferred on her by the IDEA, 20 U.S.C. §1400, et seq.. Plaintiffs have been partially aggrieved by the November 28, 2002 findings and decision of the state level review officer attached hereto as Exhibit A, and appeal only those portions of the hearing decision which were overturned by the review officer.

3. This action arises under the laws of the United States, as set forth herein; therefore, jurisdiction is conferred on this court by 20 U.S.C. § 1415 and 28 U.S.C. §1331.

4. Plaintiffs further seek declaratory relief for the violation of their civil rights, and jurisdiction is conferred upon this court through 28 U.S.C. §2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

5. Plaintiffs have exhausted their administrative remedies under 20 U.S.C. §1400, et seq.

6. Venue is invoked pursuant to 28 U.S.C. §1391.

7. Nevada Administrative Code for Special Education Programs, Chapter 388, was enacted to further supplement and protect the rights afforded plaintiffs by the IDEA. These code sections, which set forth the Nevada Master Plan for Special Education are designed to ensure that all individuals with exceptional needs in Nevada are guaranteed a program of free and appropriate publicly supported education. Plaintiffs request that this Court assume pendent jurisdiction and decide issues of Nevada law pursuant to 28 U.S.C. §1652.

## PARTIES

Plaintiffs STEPHANIE W. and SHIRLEY R. are citizens of the United States and residents of Las Vegas, Nevada. SHIRLEY R. is the parent of STEPHANIE W. During all relevant time periods of this matter, Stephanie was a disabled child who was entitled to free and appropriate special education and related services pursuant to the Individuals with Disabilities Education Act (hereinafter "IDEA"), 20 U.S.C. § 1400 et seq., the regulations promulgated

-3-

thereto, and the Nevada Administrative Code for Special Education Programs, Chapter 388 (hereinafter "NAC").

Plaintiff SHIRLEY R. sue on behalf of her daughter STEPHANIE W., pursuant to Federal Rule of Civil Procedure 17(c), as well as in her own right, as she has been financially responsible for obtaining and providing for Stephanie an appropriate private educational program and services that should have been provided by defendant pursuant to federal and state law.

### DEFENDANTS

8.  Defendant CLARK COUNTY SCHOOL DISTRICT (hereinafter "District"), is a local governmental agency, chartered and incorporated under Nevada law, with the capacity to be sued. The District receives federal funds under the IDEA and other federal financial assistance programs and is subject to the requirements of 20 U.S.C. §1400, et seq. The District is therefore responsible for the provisions of free and appropriate special education and related services, i.e. FAPE, to all disabled children from birth through 22, whose parents or parents reside in the District's boundaries. The District must submit for approval to the Nevada Department of Education master plan which assures that the District will provide FAPE to all individuals with disabilities residing in the District, thus enabling the District to receive federal financial assistance through the IDEA.

### FACTUAL BACKGROUND

9.  On March 21, 2002, SHIRLEY R. requested a due process hearing with regard to disputes concerning the district's failures and/or refusals to properly adhere to procedural safeguards and to evaluate for and to identify Stephanie's disabilities, and failures and/or refusals to offer or provide appropriately intensive special education programs and services, as were required given her significant level of disability as a child with multiple impairments including autism, and the parent's right to reimbursement for the costs of appropriate evaluations and services, along with assistive technology from January 2001 to June 2002 forward.

Among other issues, due to her unique educational needs as a child with multiple impairments including autism, the state hearing officer determined that Stephanie required 120 minutes of speech per week by an SLP trained in autism, wherein she could make appropriate developmental and communicative gains, along with the development of a new IEP including a consultation from Autism Partnership, and reimbursement for outside evaluations and compensatory education for one year period, pursuant to her rights under the IDEA, 20 U.S.C. §1400 et seq., and the regulations promulgated thereto.

10. On a paper review of the hearing decision, the state review officer improperly considered the district's claim of providing Stephanie a "basic floor of opportunity" from the period of March 2001 to March 2002. The overwhelming evidence at hearing was contrary to that conclusion. The hearing officer concluded properly that Stephanie was denied a free and appropriate public education from the periods of March 2001 through June 5, 2002 in that the Individualized Education Programs (hereinafter "IEP's") failed to properly address verifiable life and communication skills thus providing appropriate supplemental supports and services and addressing Stephanie's unique and individual needs.

11. The state review officer further ignored the state hearing officer's finding that the district must provide reimbursement for an Independent Educational Evaluation (hereinafter "I.E.E.") pursuant to 34 C.F.R. 300.502 pertaining to occupational therapy and speech therapy. The state review officer improperly conducted that the assessment occurred after the June 5, 2002, Individualized Education Program (hereinafter "IEP") but failed to recognize the fact that the District had refused to provide for such services thus forcing the parent to seek an independent evaluation consistent with the intent of the statute.

12. The state review officer further ignored the testimonial and documentary evidence indicating Districts' failure to properly identify, and evaluate, Stephanie's disability and unique needs thus committing a procedural error denying Stephanie of a free and appropriate public education whereby Stephanie is entitled to compensatory education as a matter of law. The state review officer improperly overturned the state hearing officer's order to compensate

Stephanie for a period of one year including educational services with both occupational and speech therapy as well as a consultation from Autism Partnership, the sole provider approved currently by District to provide a student afflicted with autism that is chronologically advanced.

13. The decision of the Nevada Review Officer (hereinafter "SRO"), substantially disregarded the relevant documentary evidence and testimony in this matter and failed to properly apply the burden of proof to the District, as is required in the Ninth Circuit, when partially overturning the reimbursement ordered to the parents by the Nevada Hearing Officer (hereinafter "SHO"). Plaintiffs are therefore partially aggrieved by the decision of the State Review Officer. Plaintiffs assert that no deference should be afforded the SRO decision.

14. Moreover, the district has at all relevant time periods herein described categorically refused to identify or to consider Stephanie's unique educational needs and her specific disabilities under the category of multiple impairments including autism, and were not willing to address her significant communicative needs. Defendant district has failed to properly consider Stephanie's unique and individual needs as a child with a disability, or to plan or provide an appropriate individualized educational program for Stephanie to address these needs, claiming that she could be adequately served in a generic group-based educational program, devoid of speech and occupational therapy, as was available in the district. Consequently, her parent was forced to provide a private independent evaluation(s) (hereinafter "I.E.E.") at her own expense by Ms. Tania Stegen-Hanson and Ms. Racquel Yumiaco. Stephanie's unique and individual needs and the refusal, failure and inability of the district to appropriately plan and provide an appropriately structured individualized education plan (hereinafter "IEP") with appropriate supports and services, make it impossible for Stephanie to receive a basic floor of educational opportunity without the private speech and occupational therapy services recommendations provided by her parent at a substantial cost.

15.  The district has failed to meet its legal obligations, remediate under federal and state laws, including but not limited to, failing to do the following:

(a)  failing to seek and serve, including failing to provide a full and individual evaluation, or identification, of Stephanie's educational needs in all areas related to her suspected disabilities, including but not limited to learning needs based on autism, pursuant to 34 C.F.R. § 300.531 - 300.536.

(b)  failing to qualify Stephanie for special education under the category of autism and failing to plan, provide and implement substantially appropriate and procedurally correct Individualized Education Programs (hereinafter I.E.P.s), and services pursuant to 34 C.F.R.  § 300.340 - 300.347.

(c)  failing to provide a full and appropriate educational opportunity with appropriate special education support and services to Stephanie from January 2001 through June 5, 2002, pursuant to 20 U.S.C.§ 1414;  20 U.S.C 1412;  and 34 C.F.R § 300.304.

(d)  failing to follow mandated placement procedures pursuant to 34 C.F.R. § 300.535.

(e)  failing to provide a full continuum of appropriate placement, program and service options pursuant to 34 C.F.R. § 300.551 and §300.552.

(f)  failing to ensure that Stephanie's speech and occupational therapy program and related services recommendations by Ms. Tania Stegen-Hanson and Ms. Racquel Yumiaco were provided at no cost to her parent pursuant to 34 C.F.R. § 104.33 and §§ 300.300, 300.502.

16.  An administrative hearing was conducted pursuant to federal and state law beginning on September 4 and 5, 2002 to resolve the disagreement between the district, and the parent concerning the issues set forth in the state hearing officer's decision, attached hereto as Exhibit C, and incorporated fully herein.

The State Hearing Officer (hereinafter "SHO") found in favor of Stephanie's parent on all four issues raised at the hearing, and the issues related to prospective programming were incorporated in the decision order.  On appeal of the hearing decision to a State Review

Officer (hereinafter "SRO"), reimbursement ordered to the parent for independent educational evaluations as well as compensatory education for the loss of Stephanie's educational opportunity from the periods of January 2001 to June 2002 was overturned, as described more fully above and in the decision of the SRO, attached hereto as Exhibit A and incorporated herein.

Specifically, the SRO failed to provide proper deference to the SHO, and to appropriately consider the extensive record of procedural and substantive violations under the IDEA, given Stephanie's unique disability of multiple impairment including autism, improperly applied the burden of proof to the defendant district when ruling that the district was not required to provide Stephanie with the appropriate free and public education program and services including appropriate speech and occupational therapy related services recommended by Ms. Tania Stegan-Hanson and Ms. Racquel Yumiaco and was not required to reimburse her parent for the costs of providing the independent educational evaluation (hereinafter "I.E.E.") program and services to her privately, in the absence of the provision of the same by the district, for the time periods of January 2001 through June 5, 2002. Plaintiffs appeal herein the State Review Officer's ruling on these issues and seek a denovo review of the ruling on those issues overturned by the SRO.

17. Due to the districts failures and inability to properly evaluate for and plan an appropriate educational program for Stephanie, the parent has been required to make unilateral expenditures to address Stephanie's individual needs by providing, among other things relevant to this appeal, appropriate private speech and language evaluations and services, as well as assistive technology, relative to January 2001 to June of 2002 time periods. Stephanie's parent requests that this Court provide reimbursement for those expenses which were necessary to provide an appropriate level of educational benefit for Stephanie based upon her unique educational needs in light of the district's consistent inability, failures and refusals to offer, plan or provide an appropriate individualized education program with appropriate supplementary supports and related services.

18. The parents have prevailed in all issues decided by the state hearing officer, and in a substantial procedural issue decided by the state review officer.  The parent has incurred attorneys' fees and costs for representation through all aspects of the due process proceedings pursuant to the IDEA and NAC.  Therefore, pursuant to the IDEA, 20 U.S.C. § 1415 (i)(3)(B), the parent seeks all fees and costs as prevailing parties for all aspects of the proceedings below and herein on appeal according to proof.  The invoices of Marianne C. Lanuti, counsel for the parent, for fees and costs through the due process hearing are attached hereto as Ex. B and are incorporated herein by reference.

### LEGAL FRAMEWORK OF PLAINTIFFS' CLAIM

### Individuals with Disabilities Education Act

19. The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1400, et seq., as amended in 1997, and the regulations promulgated thereunder, 34 C.F.R. Part 300, detail specific rights to which a handicapped child is entitled.  Included among, but not limited to, these rights are:

(a) the right to be provided with a full and individual evaluation, or reevaluation if needed, of Stephanie's educational needs in all areas related to her suspected disabilities, including but not limited to learning needs based on autism, pursuant to 34 C.F.R. §§ 300.531- 300.536.

(b) the right to have planned, provided and implemented, substantially appropriate and procedurally correct Individualized Education Programs (hereinafter I.E.P.s), and services pursuant to 34 C.F.R. §§ 300.340 - § 300.347.

(c) the right to be provided with full and appropriate educational opportunities pursuant to 20 U.S.C. § 1414;  20 U.S.C. § 1412;  and 34 C.F.R § 300.304.

(d) the right to be provided with mandated placement procedures pursuant to 34 C.F.R. § 300.535.

(e) the right to be provided with a full continuum of appropriate placement, program and service options pursuant to 34 C.F.R. § 300.551 and §300.552.

(f) the right to be provided reimbursement for Stephanie's independent education evaluation, at no cost to her parent pursuant to 34 C.F.R. §300.502.

(g) The right to a "free and appropriate public education" ("FAPE") 20 U.S.C. §1401(8) and (22); 34 C.F.R. §§ 104.33 and 300.300.

(h) The right to specialized educational programs and related services "at no cost to parents or parent(s),"20 U.S.C. §1401(22); 34 C.F.R. §§ 104.33 and 300.300.

20. States are required by 20 U.S.C. §1412 and 20 U.S.C. §1414 to ensure that each local educational agency in the state seeks and identifies all areas of need for those individuals with disabilities and establishes and maintains an appropriate I.E.P. for each disabled student. The local public education agencies are held responsible by C.F.R. §300.343 for initiating and conducting meetings for the purpose of appropriately developing, reviewing, and revising a disabled child's I.E.P.

21. Pursuant to 20 U.S.C. §1414 and the regulations promulgated thereunder at 34 C.F.R. §300.300 and §300.350, each local educational agency must provide appropriate special education and related services to disabled children in accordance with an I.E.P.

22. Pursuant to 20 U.S.C. §1415, a due process hearing must be held regarding any dispute arising in relation to a student's I.E.P., or the failure of a District to provide or implement an appropriate I.E.P. Any party aggrieved or partially aggrieved by the findings and decision rendered after a state level hearing or review has the right to bring a civil action in the United States District Court. In such an action, the Court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the Court determines is appropriate. 20 U.S.C. §1415 (i) (2).

23. The Handicapped Children's Protection Act of 1986, amending the Individuals with Disabilities Education Act, amended again in 1997 at 20 U.S.C. §1415 (i) (3) B), authorizes the Court to award attorneys' fees and costs to the prevailing parents herein. The parents

seek an award for attorneys' fees and costs related to all issues settled and decided in their favor and for the issues on appeal herein.

24. The district must provide a free appropriate publicly funded education to each qualified disabled person within their boundaries, regardless of the nature or severity of the person's handicap. 34 C.F.R. §104.33.

25. The district must provide free educational and related services "without cost to the handicapped persons or to his or her parents or parent." 34 C.F.R. §104.33.

26. Each recipient that operates a public elementary or secondary education program shall provide special education and related services that are designed to meet the unique needs of the handicapped person as adequately as the needs of non-handicapped persons are met and are based upon adherence to procedures that satisfy the requirements of 34 C.F.R. §§104.33-37.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

27. Plaintiffs hereby incorporate by reference paragraphs 1-26 above.

28. Defendants have violated the IDEA, 20 U.S.C. §1400 et seq., violating plaintiff's procedural and substantive due process rights, including but not limited to the following rights:

   (a) the right to be provided with a full and individual evaluation, or identification, of Stephanie's educational needs in all areas related to her suspected disabilities, including but not limited to learning needs based on her autism pursuant to 34 C.F.R.§§ 300.531 - 300.536.

   (b) the right to have planned, provided and implemented appropriate Individualized Education Programs (hereinafter "I.E.P.s") and related services pursuant to 34 C.F.R. §§ 300.340 - § 300.347.

   (c) the right to be provided with full and appropriate educational opportunities pursuant to 20 U.S.C.§ 1414; 20 U.S.C. § 1412; and 34 C.F.R § 300.304, as set forth above.

-11-

(d)    the right to be provided with mandated placement procedures pursuant to 34 C.F.R. § 300.535.

(e) the right to be provided with a full continuum of appropriate placement, program and service options pursuant to 34 C.F.R. § 300.551 and §300.552.

(f) the right to be provided with Stephanie's speech and occupational therapy needs including an independent education evaluation(s), at no cost to her parent pursuant to 34 C.F.R. § 300.401.

(g) The right to a "free and appropriate public education" ("FAPE") 20 U.S.C. §1401(8) and (22); 34 C.F.R. §§ 104.33 and 300.300.

(h) The right to specialized educational programs and services "at no cost to parents or parent(s)," 20 U.S.C. §1401(22); 34 C.F.R. §§300.300.

SECOND CAUSE OF ACTION

29. Plaintiffs hereby incorporate by reference paragraphs 1-28 above.

30. Defendants have violated the IDEA, 20 U.S.C. §1400, et seq. by failing to fully consider Stephanie's individual needs as a child with multiple impairments including autism when formulating and implementing Stephanie's individualized education program, including but not limited to the following rights:

(a) the right to be provided with a full and individual evaluation, or identification, of Stephanie's educational needs in all areas related to her suspected disabilities, including but not limited to learning needs based on her autism, pursuant to 34 C.F.R. § 300.531 - 300.536.

(b) the right to have planned, provided and implemented appropriate Individualized Education Programs (hereinafter I.E.P.s) and related services pursuant to 34 C.F.R. § 300.340 - § 300.347.

(c) the right to be provided with full and appropriate educational opportunities pursuant to 20 U.S.C.§ 1414; 20 U.S.C. § 1412; and 34 C.F.R § 300.304, as set forth above.

(d)    the right to be provided with mandated placement procedures pursuant to 34 C.F.R. § 300.535.

(e) the right to be provided with a full continuum of appropriate placement, program and service options pursuant to 34 C.F.R. § 300.551 and §300.552.

(f) the right to be provided with Stephanie's appropriate speech and occupational therapy program and independent evaluation(s), listed in the state hearing officer's decision, at no cost to her parent pursuant to 34 C.F.R. §§ 104.33 and 300.300.

(g) The right to a "free and appropriate public education" ("FAPE") 20 U.S.C. §1401(8) AND (22); 34 C.F.R. §§ 104.33 and 300.300.

(h) The right to specialized educational programs and services "at no cost to parents or parent(s)," 20 U.S.C. §1401(22); 34 C.F.R. §§300.300.

<u>THIRD CAUSE OF ACTION</u>

31. Plaintiffs hereby incorporate by reference paragraphs 1-30 above.

32. Defendants have violated the IDEA, 20 U.S.C. §1400, <u>et seq.</u>, by failing to offer or to provide an appropriate educational program and services at no cost to plaintiff's parent as necessary for Stephanie as a child with a disability including autism to receive a free and appropriate public education, including but not limited to the following rights:

(a) the right to have planned, provided and implemented appropriate Individualized Education Programs (hereinafter I.E.P.s) and related services pursuant to 34 C.F.R. § 300.340 - § 300.347.

(b) the right to be provided with full and appropriate educational opportunities pursuant to 20 U.S.C.§ 1414 ;  20 U.S.C. § 1412;  and 34 C.F.R § 300.304, as set forth above.

(c)    the right to be provided with mandated placement procedures pursuant to 34 C.F.R. § 300.535.

(d) the right to be provided with a full continuum of appropriate individualized placement, program and service options pursuant to 34 C.F.R. § 300.551 and §300.552.

(e) the right to be provided with Stephanie's speech and occupational therapy program and services recommendations by Ms. Tania Stegen-Hanson and Ms. Racquel Yumiacco, at no cost to her parent pursuant to 34 C.F.R. §§ 104.33 and 300.300.

(f)   The right to specialized educational programs and related services "at no cost to parents or parent(s)," 20 U.S.C. §1401(22); 34 C.F.R. §§ 104.33 and 300.300.

### FOURTH CAUSE OF ACTION

33. Plaintiffs hereby incorporate by reference paragraphs 1-32 above.

34. Plaintiffs are the prevailing parties all substantial issues settled on October 7, 2002 with respect to the prospective issues and decided by the State Hearing Officer, and as such are entitled to an award of reasonable attorneys' fees and costs pursuant to the provisions of the IDEA, 20 U.S.C. § 1415 (i) (3) (B).  The invoice of  Marianne C. Lanuti, counsel for the parent, for fees and costs through the due process hearing are attached hereto as Ex. B and are incorporated herein by reference.

### PRAYER FOR RELIEF

1. Assume jurisdiction over the issues raised herein on appeal and in the request for attorney's fees and costs in this matter;

2. Receive the administrative record in this matter and hear and receive additional evidence offered by plaintiffs on the issues raised on appeal in this matter;

3. Uphold the decision by the State Hearing Officer in its entirety, including those relevant portions overturned by the State Review Officer;

4. Conduct a hearing into the matter of providing Stephanie W., a child with a disability including autism, a free and appropriate publicly funded educational program and services, and render a decision that providing the intensive speech and occupational therapy services including a consultation from the sole approved District provider (Autism Partnership) is necessary for Stephanie W. to receive a free appropriate education for all relevant time

periods, including the relevant time periods overturned by the State Review Officer, which are the time periods between January 2001 through June 5, 2002;

4. Render a decision that the Shirley R. is entitled to the reimbursement from defendant Clark County School District as ordered by the Nevada Hearing Officer for the costs of the independent education evaluations conducted by Racquel Yumiaco in the amount of $270.00 and by Tania Stegen-Hanson, subject to proof, because of the district's failure and inability to offer, plan or provide these services to Stephanie;

5. Issue a declaratory judgment that defendants' refusal, inability and failure to provide a free appropriate public education and services to Stephanie is a violation of plaintiffs' procedural and substantive rights under 20 U.S.C. §1400, et seq. and 29 U.S.C. 794;

6. Award to plaintiffs appropriate damages, all costs, all reasonable attorneys' fees and costs, in accordance with the Individuals with Disabilities Act, 20 U.S.C. § 1415 (i) (3)(B) for representation in connection with the administrative hearing and state level review as well as reasonable fees and costs, according to proof, for the efforts to obtain fees and costs from the defendant, including fees and costs to bring this action;

7. Award appropriate compensatory services and damages, including but not limited to retroactive reimbursement to the parents for the costs of the independent evaluations and services, to compensate for the failures of the district to address Stephanie's unique needs as a child with multiple disabilities including autism; and

8. Grant all other and further relief as the Court deems just and proper.

Dated: Dec. 16, 2002

Attorney for Petitioners
Marianne C. Lanuti
Nevada Bar #7784

BEFORE THE
IMPARTIAL STATE REVIEW OFFICER

In the matter of:
STEPHANIE WIENCEK, by and
through his parent and next friend,
SHIRLEY RAY,

PETITIONER,

v.,

CLARK COUNTY SCHOOL
DISTRICT,

RESPONDENT

On Appeal from the Decision of the
Impartial Due Process Hearing of
October 7, 2002

FINDINGS OF FACT,
CONCLUSIONS OF LAW,
DECISION AND ORDER

November 28, 2002

**For the PETITIONER:**

Marianne C. Lanuti, Esq.
194 Inveraray Court
Henderson, NV 89704

**STATE REVIEW OFFICER**
Russell L. Colletta, M. Ed.

**For the RESPONDENT:**

Phoebe Redmond, J.D., and
Michael Harley, J.D.
Administrative Specialists
Clark County School District
2832 East Flamingo Road
Las Vegas, NV 89121

EXHIBIT A

## Background Information

On March 21, 2002, a request for due process was filed on behalf of the Petitioner by her counsel, and Dr. Richard Daugherty was subsequently appointed as the Impartial Hearing Officer by the Nevada Department of Education. An Impartial Due Process Hearing was conducted on September 4 and 5, 2002, in Las Vegas, Nevada. The Hearing Officer rendered a decision on October 7, 2002, within the revised timeline and according to required procedure.

On October 18, 2002, the Respondent filed a request with the Nevada Department of Education for a review of the Hearing Officer's decision, pursuant to the Nevada Administrative Code § 388.315(1). This request was made within the required timeline and was granted. This Review Officer was appointed to the case.

On October 21, 2002, the Petitioner filed a cross appeal within the required timeline and is included in the record.

This Review Officer notified the parties of his appointment on October 29, 2002, and gave notice the parties would be permitted to submit a brief stating their respective positions on the appeal. This brief was to be limited to five (5) pages in length, as it appeared the record was complete and supplemental testimony and evidence was not indicated. The parties submitted their briefs by the deadline and are part of the record. However, the Respondent's brief exceeded the required page limit, which prompted a motion by the Petitioner to strike it from the record. The Petitioner's motion to strike was denied; however, the Petitioner was allowed to submit a supplemental brief to equal the opportunity of the Respondent to state his position. This brief was received by the Review Officer and is part of the record. In order to accommodate the supplemental brief, the Petitioner made a motion to extend the timeline for a decision and order to November 28, 2002. The Review Officer granted this motion.

The record in this matter is complete and has been thoroughly and completely reviewed. The transcript does not indicate items of evidence were formally admitted into the record by the Hearing Officer during the hearing, and consequently were not give an exhibit number. Discussion and opportunity to challenge items being brought into the record was not reflected in the transcript, but neither party protested this procedure. It appears the Respondent sequentially numbered his items before disclosure, and the Petitioner also followed a numbering scheme. The parties consistently referenced these numbering systems when referring to documents during the hearing. The evidentiary items are referenced by description in this decision rather than by admitted exhibit number.

### Issues on Review

1. Did the Respondent fail to provide legally required notice to the Petitioner's parent for IEP meetings conducted on March 27, 2001, and May 30, 2001?

2. Did the IEP's designed on March 27, 2001, May 30, 2001, and June 5, 2002, (6/5/02 meeting initially convened on March 13, 2002, and continued to the later date) fail to provide the Petitioner a Free Appropriate Public Education?

3. Did the Respondent fail to properly identify and serve the student's educational needs based on a diagnosis of autism?

4. Is the Petitioner entitled to compensatory education due to a failure to provide a Free Appropriate Public Education?

5. Is the Petitioner entitled to reimbursement for Independent Educational Evaluations for Occupational and Speech Therapy, and should the evaluation order from the Autism Partnership Group be conducted at public expense?

6. Is the Petitioner entitled to reimbursement for the purchase of a touch screen device used at home?

## Findings of Fact

1.  The Petitioner is a thirteen-year-old female student who is eligible for special education and related services. The Petitioner has received disability related educational services from the Respondent, Clark County School District (CCSD), since she was three years old, with the exception of a two year placement in a residential program for persons with disabilities in Utah that ended in December 2000. *[Petitioner's Appeal Supplemental Brief, p. 2]*

2.  Upon her return to the CCSD, the Petitioner was placed at Variety School, a special school for children with disabilities, on an interim service plan (interim IEP). This occurred in January 2001. *[Respondent's Appeal Brief, p.2]*

3.  On March 27, 2001, an IEP meeting was held to design an educational plan for the Petitioner in the CCSD. The plan included measurable goals to increase pre-language skills, and independent living and leisure skills. However, the specified specially designed instruction only addressed academic instruction. The parent did not attend this meeting. *[Testimony from Simmons, Hearing Transcript (H.T.) p. 26, unmarked admitted exhibit of IEP document dated 3/27/01]*

4.  At that time, the student was residing at the Danville Group Home, a facility for persons with disabilities. The address for the Danville facility is listed as the Petitioner's home address on the CCSD "Enrollment Information Sheet", and the Petitioner's birth mother is listed as the "parent/guardian". *[Unmarked admitted exhibit entitled "Enrollment Information Sheet"]*

5.  Notice of the March 27, 2001 IEP meeting was sent, according to her enrollment records, to the Petitioner's home address (Danville facility) via written notice placed in her backpack on three occasions (3/16, 3/22, 3/26, 2001). The staff at Danville committed to providing a copy of the IEP notice to the parent.

4

*[Testimony from Herrod, H.T. p. 133; unmarked admitted exhibit titled "Status Record" entry by witness]*

6. The Petitioner's mother was also notified of the meeting by phone on March 22, 2001, and she indicated she would attend the IEP meeting. *[Testimony from Herrod, H.T., p. 132; unmarked admitted exhibit titled "Status Record" entry by witness for 3/22/01]*

7. On May 21 and 24, 2001, Notice of a "Review for Addendum" meeting (CCSD Form 563/564) was sent to Danville. On May 24, 2001, a phone message was also delivered to the Petitioner's mother. *[Unmarked admitted exhibit titled "Status Record", entries for May 21-24, 2002]*

8. On May 30, 2001, an "addendum IEP" meeting was held. Vision consultation services were added under specially designed instruction. Assessment results were discussed and it was noted the Petitioner did not qualify for Occupational or Physical Therapy, which had not been provided in the March 27, 2001 IEP. No other changes were made at that time to the services provided to the Petitioner. The parent did not attend the meeting. Copies of the IEP and Procedural Safeguards were "sent" home to the parent. *[Unmarked admitted exhibit titled "Status Record" entries for May 30, 2002; unmarked admitted exhibit, IEP document dated May 30, 2001]*

9. In a report dated February 8, 2001, Dr. Donald Johns, M.D. stated, "meets (indecipherable) criteria for autism". Also, "PDD is certainly (indecipherable) to microcephaly". The district was given a copy of this report by the Petitioner's mother, but there is no evidence the parent gave permission for further evaluations. *[Petitioner's Appeal Brief, p.3; H.T., p. 438; unmarked admitted exhibit dated 2/8/01 titled "Neurology Specialists Progress Note"]*

10. On January 30, 2002, Dr. Johns evaluated the Petitioner. In his report under "Impressions", he indicates "PDD-NOS Prob. Not Autistic, Transitions well", but in "Recommendations" states, "Treat as if autistic – behavioral educ. approach. ST, OT". *[Unmarked admitted exhibit dated 1/30/02 titled "Neurology Specialists Progress Note"]*

11. On February 15, 2002, the Petitioner's mother sent a letter to Stephanie Simmons at the CCSD requesting a full evaluation across all settings from the Autism Partnership Group, an independent contractor with the district. *[Unmarked admitted exhibit, letter to Simmons]*

12. On March 13, 2002, an IEP meeting was convened to do an annual review of the Petitioner's educational program. The meeting was continued in order to allow time to complete the evaluations that had been requested by the parent. *[Testimony from Simmons, H.T., p. 50]*

13. On May 28, 2002, the Petitioner was the subject of a multi-disciplinary team (MDT) meeting to determine her eligibility. The team found her eligible for special education and related services under the categories, "Severe Mental Retardation/Multiple Impairment" and "Autism". The autism eligibility was selected because the condition could not be ruled out, but there was disagreement within the team. The Petitioner is also legally blind and eligible under "Visually Impaired". The parent was present at this meeting. *[Unmarked admitted exhibits dated 5/28/02 titled, "Statement of Eligibility, Eligibility Team Report"; Testimony from Lamkins, H.T. p 171-175]*

14. An IEP meeting was conducted on June 5, 2002, to design a program consistent with the findings of recent evaluations and to consider parent request for services. The document includes detailed reports of the Petitioner's present level of performance in a variety of areas. The plan acknowledges the Petitioner's strength in the initial stages of a recently implemented home based Picture

Exchange Communication System (PECS), mobility, and use of residual vision. The plan notes concerns about her need for increased communication skills and self help skills. The plan called for specially designed instruction to include PECS, functional living skill instruction, functional communication skill instruction, and adaptive physical education. There were extensive aids and services defined to supplement the specially designed instruction. The Petitioner was also provided direct and consultative speech therapy for 60 minutes per week, specialized transportation, and direct and consultative orientation and mobility, all as related services.   *[Unmarked admitted exhibit, IEP document dated 6/5/02]*

15. During the period of time following the March 27, 2001 IEP, the Petitioner received instruction at Variety School in both academic and functional living skills in a program that included only students with mental retardation, blindness, and physical disabilities. She received instruction in counting, music, mobility, and toileting. *[Testimony from Herrod, H.T. pp. 136-140]*

16. Starting in early April 2002, the parent implemented PECS at home with the assistance of a parent advocate who has received training in that system. The Petitioner progressed through the initial stages (Stages 1&2 of 6) fairly rapidly. *[Testimony from Ward, H.T., pp. 321-324]*

17. The assistive technology assessment conducted by the district and reported on May 15, 2002, recommended that PECS be implemented in the classroom, and that it be introduced at stage one in 5-10 minute blocks 2-3 times a day. Also, it is imperative that the implementation is done consistently across the home and school environments. *[Testimony from Scally, H.T. pp. 394-395; unmarked admitted exhibit titled "Assistive Technology Assessment Report"]*

18. Raquel Yumiaco completed an independent speech evaluation on July 1, 2002, to "determine the appropriate use of PECS and the possibility of using this system as the Petitioner's primary means of communication". This assessment was done

nearly a month after the district had agreed to implement the PECS for the Petitioner and reached conclusions that were highly consistent with the speech/language assessment done by Lamkins for the district. *[Testimony from Yumiaco, H.T., pp. 252-257; unmarked admitted exhibit titled "Speech and Language Evaluation" from Speech and Language Intervention Services]*

19. On May 6, 2002, the district conducted an Occupational Therapy (O/T) Assessment to determine the appropriateness of occupational therapy as a related service to support her educational program. The report indicates that O/T was not recommended because she is able to access her structured curriculum at her functional level. The assessment specifically looked at how the Petitioner's fine motor ability affected her access to instruction. It was also determined that her daily living skills, like toileting, could be addressed without O/T as a related service. *[Testimony from Straughan, H.T., pp. 354-359; unmarked admitted exhibit titled Occupational Therapy Related Services Assessment Report"]*

20. An independent O/T evaluation was conducted subsequent to the June 5, 2002 IEP by the Achievement Therapy Center on June 20, 2002. The recommendations from that assessment are for clinically based, private occupational therapy for eight weeks. However, there was no direct connection established in the report and testimony between the clinically based, private services and the need for the Petitioner to have such related services to access her instructional program. *[Testimony from Stegen-Hanson, H.T., pp. 79-81; unmarked admitted exhibit titled "Achievement Therapy Center Occupational Therapy Report"]*

21. At the June 5, 2002 IEP, the team considered the use of a touch screen device for use in the home and found that it was not appropriate. *[Testimony from Scally, H.T., pp. 419-427]*

8

## Conclusions of Law and Discussion

Public Law 105-95, commonly known as the Individuals with Disabilities Education Act (IDEA) *[20 U.S.C. §1400, et seq.]* requires local educational agencies to provide all children with disabilities within their jurisdiction a Free, Appropriate Public Education (FAPE) in the least restrictive environment. Thus, qualifying students are entitled to special education and related services to meet the educational needs caused by their disabilities. The IDEA, with its accompanying regulations found in Chapter 34 of the Code of Federal Regulations, an extensive body of case law, as well as Nevada Administrative Code, are all controlling in these proceedings.

In 1982, the United States Supreme Court rendered a decision in *Hendrick Hudson Board of Education v. Rowley, 458 U.S. 176,192 (1982)* that defined the level of educational services required to meet the requirements of a FAPE. In that decision and in all its progeny, the courts have consistently applied the same two-pronged test to determine if FAPE requirements are met. First, the decisions about educational programming and services must be made through the required procedures, and, second, those services must be reasonably calculated to confer educational benefit tó the disabled child. The instant case requires analysis of both prongs of the *Rowley* standard as it applies to multiple IEP's. The first prong of the test must be applied to the IEP's conducted on March 27, 2001, and May 30, 2001, because of alleged procedural violations. The parent received notice and fully participated in the June 5, 2002 IEP; therefore, there were no alleged procedural violations within the scope of this hearing pertaining to that meeting. Therefore, the first question before this Review Officer is:

Did the IEP meetings on March 27, 2001, and May 30, 2001, contain procedural errors that constituted a denial of a FAPE to the Petitioner?

The IDEA and accompanying regulation at 34 CFR §300.345 require the public educational agency to take steps to ensure that one or both parents are present at the IEP or are afforded an opportunity to participate. These requirements include many details to

ensure the parent has sufficient time to make schedule arrangements in order to attend, is fully informed of the items that will be considered at the meeting, and is aware of the opportunity to bring others to the meeting who have knowledge and special expertise. The record shows this information was provided in writing to the residential facility where the Petitioner lived in during the week. The district relied on the staff at the residential facility to send this written notice on to the parent, and the Danville staff even agreed to do so. The record did not provide sufficient evidence the staff at the residential facility followed through on their commitment to the district. Had there been sworn testimony from the staff at Danville that they had given copies of the notices to the parent, it would have been compelling. However, no such evidence exists in the record, and it appears conclusive that the parent did not receive the written notice, even if she may have had knowledge of the meetings by other means.

There was evidence the district staff phoned the parent to provide notice of the meeting, and according to sworn testimony, she agreed to attend the IEP on March 27, 2001. Federal regulations allow for parents to be notified by phone of planned IEP meetings, if the district keeps detailed records of the attempts it makes to notify the parents and the results of those attempts *[34 CFR §300.345 (d)(1)]*. However, federal regulations also require that the parent be given prior written notice for any proposed changes to the provisions of a FAPE. *[34 CFR §300.503]*

State regulation also specifically requires written notification of any proposed or refused action regarding the provision of a FAPE *[NAC 388.300 (3) & (4)]*. Such notice must be in a written language understandable to the general public and in the native language of the parent. The IEP meetings in 2001 clearly dealt with many aspects of the provision of a FAPE to the Petitioner. Again, there is no clear trail of evidence this required written notice ever made it to the parent. Therefore, it is conclusive from the record that the district did not fulfill the procedural requirements of the state and federal notice regulations on changes to the provisions of FAPE for the IEP meetings on March 27, 2001, and May 30, 2001.

The question now turns to whether or not this procedural violation of regulation was sufficient to cause a denial of FAPE to the Petitioner. The clear intent of federal law and regulation is to ensure full opportunity for parent participation in decisions regarding the educational program for their disabled children. The courts have addressed this issue and there is case law exactly on point from the appellate court controlling Nevada. The courts have said that procedural flaws do not automatically require a finding of a denial of a FAPE. Procedural violations may result in a denial of a FAPE if they result in the loss of educational opportunity to the student *or seriously infringe on the parents' participation in the IEP process* (emphasis added). Thus, the courts have created a two-prong test for determining if a procedural violation resulted in a denial of FAPE for a student: (1) whether a procedural protection has been violated, and (2) whether the procedural violation resulted in a loss of educational opportunity to the student or seriously infringed on the parents' participation in the IEP process *[W.G. v. Board of Trustees of Target Range School District No. 23, 960 F.2d 1479, 1484 (9th Cir. 1992)].* In the instant case, any reasonable person would conclude that this violation infringed on the parent's participation in the IEP process because she, in fact, did not participate at all in the two IEP's conducted in 2001.

Therefore, application of the second prong of the Rowley test to the IEP's on March 27, 2001 and May 30, 2001, becomes moot, as this procedural error, in and of itself, equates to a denial of a FAPE.

Did the IEP conducted on June 5, 2002, provide a FAPE to the Petitioner?
The analysis now turns to an application of the second prong of the Rowley test for the IEP conducted on June 5, 2002, as there were no procedural violations at issue for that meeting. Specifically, was the educational program designed in the June 5, 2002 IEP reasonably calculated to confer educational benefit to the Petitioner?

The evidence is clear that the Petitioner's present levels of performance had been thoroughly assessed immediately prior to the IEP meeting on June 5, 2002. Therefore, it is reasonable to conclude that the team considered all the current educational needs of the

11

Petitioner. The team also considered information from the parent about her successful implementation of a Picture Exchange Communication System (PECS) for the Petitioner, and included that in the specially designed instruction to be provided to her. The IEP contains measurable goals and benchmarks that were related to the findings and recommendations in the assessments. There are sufficient supports defined in the IEP to reach the goals.

The provision of Occupational Therapy as a related service is also in dispute.  The results of an independent O/T evaluation conducted after the June 5, 2002 meeting were presented at hearing but never considered by an IEP team due to the hearing timelines. It should be noted this evaluation recommended private, clinically based services for eight weeks. There is little doubt these services could be beneficial to the Petitioner. However, the evidence does not support the notion that this short-term, clinically based therapy is *required* (emphasis added) for the Petitioner to benefit from her educational program as proposed in the June 5, 2002 IEP. A related service must meet the standard of being required in order for the student to benefit from her educational program before the district is obligated to provide it. *[34 CFR §300.24(a)]*  There was considerable testimony about the need for occupational therapy as a related service as opposed to the skills for daily living that are part of the Petitioner's specially designed instruction in a functional educational program. There was compelling testimony about the appropriateness of teaching the Petitioner these skills as part of her educational program, and that the instructional staff can accomplish this if they have been given direction and training in this area. It is conclusive the Petitioner can benefit from this instruction and that it does not need to be accomplished through a therapy intervention.

This was the first IEP conducted after the student was found eligible under the category of "autism".  There was significant testimony that seemed to focus on the significance of this diagnosis and eligibility as determining factors for the provision of certain services or programs. Certainly, the presence of certain disability characteristics should influence educational decisions. However, a medical diagnosis or finding of eligibility under a particular category does not, in and of itself, drive program decisions.  The unique

12

educational needs of the child must be addressed by a plan that is reasonably calculated to confer benefit.

The Petitioner's constellation of disabling conditions is wide ranging. She is severely mentally retarded, legally blind, physically impaired, and demonstrates autistic like behaviors. All these conditions should be appropriately addressed in her IEP, and no single condition "trumps" the others. Furthermore, IDEA regulations require that the services and placement be based on the child's unique needs and not on the child's disability category. *[34 CFR §300.300(a)(3)(ii)]*

We turn again to *Rowley* and subsequent decisions for guidance on this issue. The Supreme Court in *Rowley* used the phrase "basic floor of opportunity" to describe the level of service that must be provided under the law. The court went on to caution that it was not the intent of Congress to ensure disabled children merely have access to an education that conferred *no* benefit (emphasis added). Subsequent cases have sought to refine a balance between the provision of an educational program with no, or minimal, benefit and maximizing the student's potential by the "best" program available. However, a district is clearly not required to provide any and all services that may ultimately provide benefit to a disabled student, those preferred by the parent, or services at a level that seeks to maximize a student's potential. *[Gregory K. v. Longview School District 811 F.2d 1307, U.S. Court of Appeals, Ninth Circuit (1987)]*

In *Rowley*, the court also stated that Congress did not intend to achieve a strict equality of services as a measure of the legal requirement to confer benefit. Each program must be evaluated on its own merit. Therefore, any contention that the district had a legal obligation to implement the IEP from the Utah placement in its entirety is not valid.

Having considered all these factors, this Review Officer finds the June 5, 2002 IEP is reasonably calculated to confer educational benefit to the Petitioner.

13

Is the district obligated to provide compensatory education due to the procedural failure in the March 27, 2001 and May 30, 2001 IEP's?

The analysis now turns to a review of the legal requirements for the provision of compensatory educational services. The basis of this claim is an allegation the district failed to provide a FAPE in the 2001 IEP's because of procedural failures, and it delayed determining the Petitioner's eligibility under the category of autism. It has been determined that the district did not meet the procedural requirements in the 2001 IEP's. Therefore, a claim for compensatory education may be warranted on those grounds. Also, the district did not determine the student has autism until late spring 2002.

It must be noted that awarding compensatory education is an equitable remedy, not a contractual one *[Parents of Student W. v. Puyallup School District, 31F3d. (9th Cir. 1994)]*. One does not receive compensatory education as a "punitive damage" award; it is a remedy allowed by the law that is designed to compensate for lost educational opportunities. Also, the conduct of both parties must be considered in determining an equitable remedy. In order to determine an equitable remedy, the analysis of a failure to provide a FAPE must be accompanied by a subsequent, clear indication of the lost opportunity suffered by Petitioner. The evidence and testimony never clearly established the specific harm that ensued as a result of the failure to include the mother in the 2001 IEP's. Many things are implied, but nothing is clearly established in the record.

There was considerable testimony about the use of a PECS, with an implication the Petitioner could have benefited from the implementation of this system sooner. However, even the parent didn't consider this intervention until April 2002. One could also argue that if autism eligibility had been determined earlier, certain services (specifically, a PECS) would have automatically accrued. However, the law requires that services are not determined by eligibility, but according to the unique needs and abilities of the child. Given the Petitioner's visual impairments and mental retardation, it is reasonable to question the possible efficacy of the PECS system, even if a diagnosis of autism had been established. The fact that the Petitioner eventually did accomplish stage one and two of the system in the spring of 2002 is not proof the Petitioner is now entitled

14

to compensatory education on the speculation that this success might have been accomplished earlier. If that were the standard, any success a disabled student ultimately experiences would be subject to speculation that it may have been accomplished earlier, and that success is now a basis for compensatory services. Determining what is reasonably calculated to confer educational benefit is always done with a bit of conjecture.

The Petitioner's mother submitted a physician's report to her home school in February 2001. However, this report is not, in and of itself, conclusive as to the Petitioner having an educational eligibility for autism. In fact, careful review of the doctor's report does not indicate a diagnosis of autism in the section entitled "diagnosis". Therefore, this one piece of evidence is not compelling for determining the district failed to reach a timely conclusion that the Petitioner suffers from autism. When that determination was finally made through the required educational evaluation process, it was acknowledged that it was only determined because autism could not be ruled out.

The Hearing Officer ordered an evaluation from the Autism Partnership Group (APG) in his decision as a compensatory service. However, the district's Low Incidence Disability Team conducted an evaluation that sworn testimony indicated was similar in purpose to that conducted by the APG. So, it is reasonable to question the need for this further evaluation. It was revealed in the Review Brief from the Respondent that the APG is a private, contractor service. Therefore, the net effect of this order is for a private organization to perform a public duty, which is beyond the scope of authority in this process.

The provision of Occupational Therapy is another consideration for compensatory education. However, it has been shown that the need for O/T as a related service has not been established. O/T in a clinical setting is probably useful to the Petitioner, but is the district legally required to provide it? Again, in order for a particular related service to be required, it must be necessary in order for the student to benefit from his educational program. The related service must provide a necessary catalyst that is required for the

15

educational program to be successful. In determining the need for these services, evaluations that specifically consider the relevance of the service in the educational setting are more useful than a strictly clinical assessment. The education based O/T evaluation found the Petitioner does not qualify for this therapy as a related service. Therefore, provision of it as a compensatory service is not warranted.

Given these factors, the question becomes, "what is an equitable remedy for the procedural failure in the 2001 IEP's that is logically connected to a lost educational opportunity clearly established in the record?" This Review Officer fails to find clear evidence in the record of a specific, lost educational opportunity, given the district's obligation to provide services that offer a "basic floor of opportunity" in the time period from March 2001 to March 2002.

The district began its annual review of the Petitioner's IEP in March 2002 and concluded it on June 5, 2002. This IEP has been found to meet the district's legal obligation to provide a FAPE to the Petitioner. The most significant service added to the program from previous plans is the implementation of a PECS across home and school settings. At this point in time, this is the most appropriate, significant intervention to benefit the Petitioner. It will help her acquire a functional communication system and progress in her education. However, the district has already agreed to provide it at a reasonable level through the IEP process. Given this fact, and the finding that the PECS was considered in a timely manner by the IEP team, compensatory educational services are not warranted.

<u>Is the Petitioner entitled to reimbursement for Independent Speech/Language and Occupational Therapy Evaluations?</u>
Federal and state law, as well as regulation, entitle parents of disabled children to an Independent Educational Evaluation (IEE) at public expense, subject to certain limitations. *[34 CFR §300.502]* In essence, the burden of proof is on the district to prove through a due process hearing its evaluations are appropriate, or it must pay for the IEE.

The first analysis will focus on the Speech/Language IEE conducted by Speech & Language Intervention Services. A review of the testimony by the evaluator from Speech & Language Intervention Services indicates she substantively agreed with the findings and evaluation procedures of the district. She confirmed the district's findings that a PECS should be implemented for the Petitioner. Essentially, the IEE confirmed the appropriateness of the district's speech and language assessment.

The next analysis will focus on the Occupational Therapy evaluation conducted by the Achievement Therapy Center. This assessment was conducted after the June 5, 2002 IEP and prior to the due process hearing. Therefore, a legally constituted IEP team has never considered this evaluation.

A comparison of the evaluation and accompanying testimony between the district's staff and the private evaluator reflects a distinctly different basis. The district staff approached the Petitioner's need for O/T evaluation from the basis of whether or not it is needed to support her instructional program as a related service. The clinically based, private evaluation appears to approach the Petitioner's need for O/T from the basis of the benefit she could derive from a clinically based intervention. There does not appear to be a significant difference between the two evaluations when considering essential issues of the Petitioner's present level of performance in life skills, like dressing and toileting.

In the testimony regarding O/T, there was some similarity between the conclusions drawn by the district staff and the private provider about the priority needs of the Petitioner. They both agreed she needs improvement in her daily living skills. However, the district staff recommended that the Petitioner's daily living skills be met through a functional curriculum rather than a therapy intervention. The private provider recommended eight weeks of clinically based, private O/T for one sixty-minute session per week that would serve to identify further interventions that might improve the efficacy of her program.

This Review Officer finds the testimony and evidence supports a conclusion that the Petitioner's functional curriculum will conform to the *Rowley* standard of being

*reasonably calculated* to benefit her in the improvement of daily living skills (emphasis added). The private provider's contention that the Petitioner needs clinically based therapy services at this juncture exceeds the level of special education required by law. Therefore, the district's evaluation is based on the appropriate role of related services under the law, and the private provider's is not.

<u>Is the Petitioner entitled to reimbursement for the "touch screen" device her mother purchased for use in the home?</u>

This issue was not addressed by the Hearing Officer in his decision, but was brought forward by the Petitioner in his cross appeal. Therefore, it will be decided in this process.

The Federal law and regulation require assistive technology devices be made available to a disabled child in his home, under certain limitations. *[34 CFR §300.308(b)]* On a case-by-case basis, the use of school-purchased assistive technology devices in a child's home or in other settings is required if the child's IEP team determines that the child needs access to those devices in order to receive a FAPE. Therefore, it could be determined that reimbursement should be paid to the parent for the purchase of a touch screen device for use in the home if it is shown to be necessary for the child to benefit from his special education program. The testimony indicated the IEP team considered the provision of a touch screen on June 5, 2002. In expert sworn testimony, the district established this device was a means to accomplish the goal of improving the Petitioner's pointing response, and it was used at school. However, it was not required to be used at home because there were many other ways this skill could be reinforced in that setting.

This Review Officer did not find compelling a letter written in 1995 recommending the device for home use. Obviously, a lot may have changed regarding the Petitioner's needs and abilities in the last seven years. The Petitioner did not provide any other evidence or expert testimony indicating the use of such a device in the home is required for her to benefit from her educational program. Therefore, the IEP team's decision to not provide home use of a touch screen device is appropriate.

18

## Decision

Having reviewed the entire record of the hearing and received argument from the parties,

this Review Officer does hereby find by a preponderance of the evidence:

On the issue of:
1. Did the Respondent fail to provide legally required notice to the Petitioner's parent for IEP meetings conducted on March 27, 2001, and May 30, 2001?

The Hearing Officer's decision is **SUSTAINED.**

On the issue of:
2. Did the IEP's designed on March 27, 2001, May 30, 2001, and June 5, 2002, (6/5/02 meeting initially convened on March 13, 2002, and continued to the later date) fail to provide the Petitioner a Free Appropriate Public Education?

The Hearing Officer's decision that the IEP's on March 27, 2001, and May 30, 2001, failed to provide the Petitioner a FAPE due to a procedural error is **SUSTAINED.**

The Hearing Officer's decision that the June 5, 2002 IEP failed to provide a FAPE to the Petitioner is **REVERSED.**

On the issue of:
3. Did the Respondent fail to properly identify and serve the student's educational needs based on a diagnosis of autism?

The Hearing Officer's decision is **REVERSED.**

On the issue of:
4. Is the Petitioner entitled to compensatory education for a failure to provide a Free Appropriate Public Education?

The Hearing Officer's Decision is **REVERSED.**

On the issue of:
5. Is the Petitioner entitled to reimbursement for Independent Educational Evaluations for Occupational and Speech Therapy, and should the evaluation order from the Autism Partnership Group (APG) be conducted at public expense?

The Hearing Officer's order for reimbursement and the order for the evaluation by the APG are hereby **REVERSED.**

On the issue of:
6. Is the Petitioner entitled to reimbursement for the purchase of a touch screen device used at home?

The Hearing Officer did not rule on this question. The Petitioner's request for reimbursement is **DENIED.**

## Order

The June 5, 2002 IEP is to be implemented without delay. To include, a well designed Picture Exchange Communication System, across home and school environments. All staff that routinely works with the Petitioner and the parent must be trained by an instructor certified to provide such training on the correct, skillful use of a PECS for the Petitioner.

It is so ordered on this 28th day of November, 2002.

Russell L. Colletta, M.Ed.

Impartial State Review Officer

## Notice of Right to Bring Civil Action

This is the final administrative remedy pertaining to the issues under review. Under 34 CFR §300.512, any party aggrieved by this Decision and Order has the right to bring civil action in any State court of competent jurisdiction, or in a District Court of the United States without regard to the amount in controversy.

**Billing for:**      **Stephanie Wiencek vs. Clark County School District**

Attorney Fees:

| | | | |
|---|---|---|---|
| Regular Hours | 60.20 X $175.00 | = | 10,535.00 |
| Hearing Hours | 22.50 X $200.00 | = | $4,500.00 |
| Appeal Hours | 26.00 X $250.00 | = | $6,500.00 |
| | | | $21,535.00 |

Total Attorney Fees:      $21,535.00

Expenses

| | |
|---|---|
| Filing fee | $175.00 |
| Service Fee | $40.00 |
| Total Expenses: | $215.00 |

Total Expenses::      $215.00

**Total Fees and Costs:**      **$21,750.00**

EXHIBIT B

# *Client Time Detail*

### *Stephanie Wiencek vs Clark County School District*

| Date | Services Performed | Time Spent |
|------|--------------------|------------|
| 3/19/2002 | Review Client's Documentation | 1.50 |
| 3/19/2002 | Initial Consultation | 1.00 |
| 3/20/2002 | Research | 2.00 |
| 3/21/2002 | Client Consultation | 2.00 |
| 3/21/2002 | Due Process Request | 0.45 |
| 3/22/2002 | Cl;ient Consult | 0.50 |
| 3/23/2002 | Client Consult | 0.25 |
| 4/4/2002 | Review Documents (751 pages) | 5.00 |
| 4/8/2002 | Client Consult- PECS | 0.50 |
| 4/10/2002 | Client Letter | 0.25 |
| 4/10/2002 | Prehearing Conference | 0.50 |
| 4/10/2002 | Client Consult | 0.50 |
| 4/13/2002 | Conference with Mediator | 0.25 |
| 4/13/2002 | Conference with Client | 0.25 |
| 4/15/2002 | Conference with Opposing Counsel | 0.25 |
| 4/15/2002 | Conference with Client | 0.25 |
| 4/28/2002 | Client conference | 0.75 |
| 5/2/2002 | Mediation | 3.00 |
| 5/7/2002 | Client Consult re: independent evals | 0.50 |
| 5/9/2002 | Confernce with client - IEP | 0.50 |
| 5/29/2002 | IEP | 3.50 |
| 5/30/2002 | Status Call- HO | 0.25 |
| 6/5/2002 | IEP | 5.00 |
| 6/6/2002 | Confernce with HO | 0.25 |
| 6/14/2002 | Conference with HO | 0.75 |
| 6/19/2002 | Conference with HO | 1.00 |
| 6/21/2002 | Prehearing Statement | 4.25 |
| 8/12/2002 | Conference with Tania Stegen-Hanson | 1.25 |
| 8/26/2002 | Conference with Raquel Yumiaco | 1.00 |
| 8/26/2002 | Review Video Exhibit | 0.75 |
| 8/27/2002 | Interview Shirley Ray | 1.50 |

EXHIBIT B

# *Client Time Detail*

### *Stephanie  Wiencek vs Clark County School District*

| Date | Services Performed | Time Spent |
|------|-------------------|-----------|
| 8/27/2002 | Interview Kori Ward | 1.25 |
| 8/27/2002 | Prepare direct exam of parent | 1.75 |
| 8/28/2002 | Review District Disclosure | 3.50 |
| 8/28/2002 | Prepare direct exam of Raquel Yumiaco | 0.75 |
| 8/28/2002 | Document Exchange with District | 0.75 |
| 8/28/2002 | Prepare direct exam of Tania Stegen-Hanson | 1.25 |
| 8/29/2002 | Conference with HO | 0.25 |
| 8/29/2002 | Prepare direct exam of Kori Ward | 1.50 |
| 8/29/2002 | Prepare Opening Statement | 1.75 |
| 8/30/2002 | Prepare direct exam of Roger Herrod | 0.50 |
| 8/30/2002 | Prepare direct exam of Trish Shepers | 1.00 |
| 8/30/2002 | Prepare direct exam of Christine Scally | 1.00 |
| 9/1/2002 | Prepare direct exam of Carol Lamkins | 1.00 |
| 9/1/2002 | Prepare direct exam of Stepahnie Simmons | 0.50 |
| 9/3/2002 | Prepare direct Deborah Kennedy | 0.75 |
| 9/3/2002 | Conference with HO | 0.75 |
| 9/3/2002 | Prepare direct Stephanie Simmonds | 1.50 |
| 9/3/2002 | Prepare direct Bob Weires | 0.75 |
| 9/4/2002 | HEARING | 5.50 |
| 9/5/2002 | HEARING | 7.50 |
| 9/21/2002 | Read Transcripts | 3.75 |
| 9/22/2002 | Closing Arguments | 5.75 |
| 10/23/2002 | Client Conference Re Appeal | 0.50 |
| 10/23/2002 | File  Cross Appeal | 0.50 |
| 11/5/2002 | Brief To State Review Officer | 2.00 |
| 11/6/2002 | Motion To Strike | 1.75 |
| 11/7/2002 | Motion To Extend | 0.50 |
| 11/8/2002 | Supplemental Brief to SRO | 3.25 |
| 11/21/2002 | Conference with Client re: IEP scheduled | 0.75 |
| 11/21/2002 | Letter of IEP notification | 0.25 |
| 11/27/2002 | Conference with client re: appeal of SRO | 0.75 |

# Client Time Detail

### Stephanie  Wiencek vs Clark County School District

| Date | Services Performed | Time Spent |
|------|--------------------|-----------|
| 12/6/2002 | IEP | 6.50 |
| 12/9/2002 | Conference with client regarding appeal to federal court | 0.75 |
| 12/15/2002 | APPEAL to Federal Court | 8.50 |
| 12/18/2002 | | 0.00 |
| | **Total Hours:** | **108.70** |

IN THE MATTER OF:

    Stephanie Wiencek,

    PETITIONER


    vs


    Clark County School District,

    RESPONDENT

**IMPARTIAL HEARING OFFICER'S DECISION**

October 7, 2002

This matter was heard before Richard F. Daugherty, Impartial Due Process Hearing Officer, in Las Vegas, Nevada on September 4 and 5, 2002.

Petitioner was represented by Marianne C. Lanuti, Esq.

Respondent Clark County School District was represented by Phoebe Redmond and Michael Harley, Student Support Services Division.

Oral and documentary evidence was received.

Decision was rendered by the revised 45-day timeline of October 7, 2002.

EXHIBIT C

## PROCEDURAL MATTERS

In a letter received by the Clark County School District on March 21, 2002, Marianne C. Lanuti, Esq., counsel for the petitioner, requested a due process hearing.

Reasons for requesting a due process hearing included the following issues:

Petitioner alleged that the district failed to properly notify parent of IEP meetings of March 27, 2001 and May 30, 2001, which resulted in the inability of parent to participate. Petitioner contended that the IEPs of the above dates as well as the IEPs of March 13, 2002 and June 5, 2002 failed to provide a FAPE. Further, petitioner alleged the district failed to properly identify and evaluate the student's autism. Petitioner sought compensatory education for district's alleged procedural errors which resulted in failure to provide a FAPE.

The parties agreed to allow testimony and cross examination of two witnesses by telephone conferencing.

## FACTS

Student is a 12 year-old girl who has received special education services since the age of three. During the student's educational history, services have been provided by the Clark County School District except for a two-year period (1998-2000) when the student was living in another state. Student has been served under IDEA as an individual with multiple impairments, secondary to severe mental retardation, and visual impairment. The student attended Variety School, a public school in Las Vegas described by a Ninth Circuit panel as a school exclusively for children with disabilities (*Eason v. Clark County Sch. Dist.*, Nos. 00-17370, 01-15749, 00-17377, 01-15692, 2002 U.S. App. (9th Cir.)), until May of 2002 when her placement was changed to Gibson Middle School in a multiply challenged specialized diversely disabled program (MCSDD).

The school district relied on providing parental notice of a planned IEP meeting by sending a notice with the student in her backpack (Herrod testimony). The student, at that time, was spending weekdays at a residential placement (Danville), and the notice was not forwarded to the parent. The testimony of the principal and teacher confirm that neither of them took mandated procedural steps to ensure proper communication with the parent (testimony of Simmons and Herrod). District personnel held an IEP meeting on March 27, 2001, without parent participation. At this meeting the student's IEP was altered as occupational and physical therapy services by specialists were terminated, and speech therapy by a specialist was reduced (Simmons).

Again, on May 30, 2001, district personnel repeated the above scenario, and conducted an IEP meeting without parental participation or proper prior notice. Again, notice was sent via backpack to the student's residential school placement (Herrod) and not forwarded. The IEP was again altered as Mr. Herrod testified that he would be providing occupational therapy. The rest of the program was, according to testimony, a "carry-over" from the previous year with very few changes in goals or benchmarks (Ward).

EXHIBIT C

On February 8, 2001, through the results of an outside evaluation by a Dr. Johns (P-31), the district became aware that the student may be eligible as a child with autism. By February, 2002, three diagnoses of the student's autism had been provided to district personnel at the Variety school (Ray), yet the district took no affirmative action to evaluate the student. The Picture Exchange Communication program (PECS), was tried at home with the assistance of a parent-advisor and only later adopted by the district. The student was eventually found eligible for Autism services in May, 2002.

On June 5, 2002, an IEP meeting was held. The district agreed to provide only 60 minutes of speech per week (P-67). Student was denied occupational therapy by a specialist, the use of a touch-screen device for home use to be provided by the district, a requested consultation from Autism Partnership, and an independent evaluation by Raquel Yumiaco. District personnel continued to assert that the student could no longer benefit from occupational therapy (Straughan). Ms. Stegen-Hanson testified that the student would benefit from occupational therapy (Stegen-Hanson).

## DISCUSSION AND CONCLUSIONS OF LAW

Issue No. 1:   Did Clark County School District fail to properly notify parent of IEP meetings of March 27, 2001 and May 30, 2001, which resulted in the inability of parent to participate?

Yes. Testimony of several school personnel clearly indicated that notices of IEP meetings scheduled by the district were sent to personnel at a residential home (Danville) and not sent to the parent's home or workplace addresses. Further, the method of sending notices to the incorrect address – the child's backpack – was inadequate to verify receipt by anyone, so that the addressing error could be corrected. Finally, district personnel conducted two IEP meetings without parental attendance.

The IDEA mandates that the IEP team include the parents of the child (34 CFR § 300.344(a)(1)). The district is instructed to

> . . . take steps to ensure that one or both of the parents of a child with a disability are present at each IEP meeting or are afforded the opportunity to participate, including (1) Notifying parents of the meeting early enough to ensure that they will have an opportunity to attend; and (2) Scheduling the meeting at a mutually agreed on time and place.
>
> 34 CFR § 300.345(a)(1) and (2)

"Information provided to parents" must also include the purpose, time, and location of the meeting and who will be in attendance (34 CFR § 300.345(b)(1)(i)).

The IDEA requires districts to use other methods to ensure parent participation when neither parent can attend an IEP meeting. Such methods include individual or conference telephone calls (34 CFR § 300.345(c)).

IEP meetings may be conducted without a parent in attendance if the district is unable to convince the parents that they should attend. In such cases, the district must have a record of its attempts to

arrange a mutually agreed on time and place. Documentation of attempted parental contact may be verified by "detailed records of telephone calls made or attempted and the results of those calls, copies of correspondence sent to the parents and any responses received, and detailed records of visits made to the parent's home or place of employment and the results of those visits" (34 CFR § 300.345(d)(1) (2) (3)).

Relevant guidance from the Nevada Administrative Code is excerpted as follows:

NAC 388.300 Parental consent; notice to parents of proposed or refused action; statement of parental rights; request for hearing; appointment of hearing officer; placement of pupil pending completion of proceedings. (NRS 388.520)

1. Except as otherwise provided in this section or NAC 388.440, informed written consent must be obtained from the parents of the pupil before conducting an initial evaluation or reevaluation and before special education and related services are initially provided to a pupil with a disability. If a parent does not provide written consent for the initial evaluation, reevaluation or the initial provision of special education, the public agency may request a hearing pursuant to this section.

2. Parental consent is not required:
   (a) Before existing data is reviewed as part of an initial evaluation or reevaluation;
   (b) Before a test or other assessment is administered to all pupils unless before administration of that test or assessment, consent is required of the parents of all pupils; or
   (c) If the public agency demonstrates that it has taken reasonable measures to obtain consent for an additional assessment to be conducted as part of a reevaluation and the pupil's parents have failed to respond.

3. Except as otherwise provided in this subsection, a public agency shall notify the parents of a pupil with a disability, other than a gifted and talented pupil, within a reasonable time before any proposed or refused action regarding the:
   (a) Placement of the pupil;
   (b) Identification or evaluation of any special educational needs of the pupil; or
   (c) Provision of a free appropriate public education to the pupil. If a parent does not agree to the proposed or refused action of the public agency, the public agency or the parent may request mediation pursuant to NAC 388.305 or may request a hearing on the proposed action, or the parent may withhold the consent required by subsection 1, if that subsection applies.

Federal law insists on parental notice. The district is required to make a concerted effort to ensure parental attendance at IEP meetings. Parents are to be accommodated regarding time and location of meetings and the purpose of the proposed IEP meeting is to be disclosed. If parents cannot attend, the district is required to offer alternative methods of communication. Even when parents refuse to attend, good faith efforts to convince them to participate and careful record keeping are mandated.

As the Ninth Circuit Court of Appeals recently noted:

Procedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA. An IEP which addresses the unique needs of the child cannot be developed if those people who are most familiar with the child's needs are not

involved or fully informed.

*Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877 (2001)

Petitioner prevails on this issue since it is the judgment of this hearing officer that the district violated the parental notification and participation mandates of the IDEA. The district produced no testimony of compliance with the requirements of federal law summarized in the above paragraph.

Issue No. 2:   Did the IEPs of the above dates as well as the IEPs of March 13, 2002 and June 5, 2002 fail to provide the student a FAPE?

The hearing officer was not convinced by the testimony of district personnel that the education plan for this student was appropriate. The plan in place did not appear to be implemented consistently nor documented reliably. It appears that the student's IEP lacked verifiable life skill goals, including communication, dressing, and toileting. It is doubtful that this student's unique needs were being met at a acceptable level. Parental requests for evaluation were not fairly considered, nor were outside evaluations considered in a timely manner. This is a violation of IDEA documented above.

Issue No 3:   Did the district fail to properly identify and evaluate the student's autism?

Over a year passed between the time that the district should have known that the student should be evaluated for autism (Petitioner's Exhibit 32) and effective action occurred. Parental requests for evaluation regarding autism were also ignored. Since petitioner has since been determined eligible for services as a student with autism by the Clark County School District (March 2002), it is probable that her educational program was not appropriate for at least the past year.

Issue No. 4:   Is the petitioner entitled to compensatory education?

Because the district has violated parental notice and participation mandates, done little to address serious life skill issues, and ignored parental requests for autism evaluations, the hearing officer finds the petitioner eligible for compensatory education.

## ORDER

It is the decision of this hearing officer that petitioner prevailed on all four issues. From the conflicting testimony received at hearing, the hearing officer is not convinced that the student has an appropriate IEP in place. It is therefore ordered that a new IEP be developed following a consultation from Autism Partnership which will be paid for by the district. In the interim, the student shall receive 120 minutes of speech per week from an SLP trained in autism.

As equitable compensatory education, the student shall receive educational services, including speech and occupational therapy for the period of one year from the date of this decision. Extended school year services shall include transportation provided by the district.

The student will be reimbursed for outside evaluations conducted by Raquel Yumiaco in the amount of $270.00 and by Tania Stegen-Hanson, subject to proof.

Each party has the right to appeal this decision to the State Department of Education within thirty (30) days of receipt of the hearing officer's decision. If there is an appeal, the State Department of Education will appoint an independent review officer to conduct an impartial review of the hearing. Either party has the right to appeal the decision of the review officer, initiating a civil court action.


Richard F. Daugherty, Hearing Officer

October 7, 2002
Date